IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ALLIE D. FULLER                                                      PLAINTIFF

v.                Civil No. 2:12-cv-02251-PKH-JRM

CAROLYN W. COLVIN,[1] Commissioner of
Social Security Administration                                DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.**      **Factual and Procedural Background**

Plaintiff, Allie D. Fuller, brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act ("the Act").  42 U.S.C. § 423.

Plaintiff protectively filed her application on October 16, 2009, alleging a disability onset date of October 31, 2007, due to residual pain from a cervical spinal fracture, and pain in her lower back, right shoulder, right elbow, hands, and legs.  Tr. 14, 17, 45, 155, 188.  On the alleged onset date, Plaintiff was thirty-nine years old with a high school education.  Tr. 22, 36-37, 160.  Plaintiff has past relevant work as a hand packer.  Tr. 22.

Plaintiff's applications were denied at the initial and reconsideration levels. Tr. 69-71, 73-74. At Plaintiff's request, an administrative hearing was held on September 13, 2010.  Tr. 29-58. Plaintiff was present at this hearing and represented by counsel.  The ALJ rendered an unfavorable

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

decision on April 8, 2011, finding Plaintiff was not disabled within the meaning of the Act. Tr. 11-23. Subsequently, the Appeals Council denied Plaintiff's Request for Review on August 23, 2012, thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-4. Plaintiff now seeks judicial review of the Commissioner's decision.

## II.　　Applicable Law

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe

impairment that significantly limits her physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform her past relevant work; and (5) if the claimant cannot perform her past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given her age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

### III.    ALJ's Determination

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since October 31, 2007, the alleged onset date. Tr. 16. At step two, the ALJ found Plaintiff suffers from the following severe impairments: cervical spinal fracture at C2 and degenerative disc disease. Tr. 16. At step three, he determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 16.

At step four, the ALJ found Plaintiff had the RFC to perform the full range of sedentary work, as defined in 20 C.F.R. § 404.1567(a). Tr. 16-22. With these limitations, the ALJ found Plaintiff could not perform her past relevant work. Tr. 22. However, based on Plaintiff's age, education, and work experience, the ALJ found that Medical-Vocational Rule 201.27 directed a finding of "not disabled." Tr. 22. Accordingly, the ALJ determined Plaintiff was not under a disability from October 31, 2007, the alleged onset date, through April 8, 2011, the date of the administrative decision. Tr. 22-23.

**IV.    Discussion**

On appeal, Plaintiff contends the ALJ erred by: (A) improperly discounting her subjective complaints; (B) making an RFC finding that is contrary to the medical evidence; and (C) improperly applying the Medical-Vocational Guidelines to determine Plaintiff could perform jobs existing in significant numbers in the national economy.  *See* Pl.'s Br. 7-14.  The Commissioner submits that substantial evidence supports the ALJ's determination.  *See* Def.'s Br. 4-16.  For the following reasons, the undersigned finds that substantial evidence supports the ALJ's decision.

A.  Credibility

Plaintiff contends the ALJ improperly discounted her subjective complaints.  *See* Pl.'s Br. 7-10.  When evaluating a claimant's subjective allegations, the ALJ must consider all evidence relating to: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions.  *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  The ALJ "may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them."  *Medhaug v.* Astrue, 578 F.3d 805, 816 (8th Cir. 2009) (quoting *Goff*, 421 F.3d at 792).  However, subjective complaints may be discounted if there are inconsistencies in the medical evidence as a whole.  *Id.*  A court "will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain."  *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (quoting *Goff*, 421 F.3d at 792).

It is well-settled that an ALJ need not explicitly discuss each *Polaski* factor; it is "sufficient if he acknowledges and considers those factors before discounting a claimant's subjective

-4-

complaints." *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004)). Contrary to Plaintiff's assertion, the ALJ properly considered her subjective complaints and dismissed them for legally sufficient reasons.

With regard to activities of daily living, the ALJ noted that Plaintiff is capable of maintaining her personal grooming and hygiene, cleaning her home, doing laundry, preparing meals, and caring for her eighteen month old child. Tr. 19, 45-48. *See Steed v. Astrue,* 524 F.3d 872, 875 (8th Cir. 2008) (in assessing credibility, the ALJ properly considered evidence that the claimant cared for her child, performed housework, cooked, and drove). The ALJ also considered the fact that Plaintiff received essentially routine and conservative treatment for her cervical spine fracture, consisting of physical therapy, pain medication and muscle relaxers, and steroid injections, and did not require surgical intervention. *See Moore v. Astrue,* 572 F.3d 520, 525 (8th Cir. 2009) (conservative treatments were inconsistent with claimant's alleged disabling pain). In fact, Arthur M. Johnson, M.D., Plaintiff's neurosurgeon, released Plaintiff to return to work without restrictions in August of 2005, less than four months following her car accident and resulting C1-C2 fracture. Tr. 19.

Plaintiff argues that her steady work history bolsters her credibility. *See* Pl.'s Br. 9. While the record demonstrates a strong work history, Plaintiff also received unemployment benefits during her alleged period of disability, which diminishes her overall credibility. Tr. 19-20, 37. Receipt of unemployment benefits is facially inconsistent with a claim of disability. A claimant must "hold himself out as available, willing and able to work" in order to receive unemployment benefits. *Johnson v. Chater,* 108 F.3d 178, 180-81 (8th Cir. 1997) (quoting *Jernigan v. Sullivan,* 948 F.2d 1070, 1074 (8th Cir. 1991)). "Applying for unemployment benefits 'may be some evidence, though not conclusive, to negate' a claim of disability." *Id*. As such, the ALJ did not err by taking into

consideration Plaintiff's receipt of unemployment benefits in his credibility analysis.

Notably, Plaintiff did not receive consistent treatment after June 5, 2008. Tr. 337. At the administrative hearing, Plaintiff testified that she could not afford routine treatment or prescription medication. Tr. 37-38, 44. However, she did not seek treatment at any low-cost clinics or charitable organizations in the area, nor has she provided evidence that she was denied medical care due to her financial situation. *Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992).

Here, the ALJ cited the proper standard, considered the factors in conjunction with Plaintiff's testimony, and then properly discounted Plaintiff's subjective complaints. *See Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) ("we defer to an ALJ's credibility determinations if they are supported by valid reasons and substantial evidence"). Plaintiff's argument that the ALJ first formulated the RFC and then used the RFC to discount Plaintiff's subjective complaints has no merit, as the ALJ provided a detailed explanation for his credibility findings using the *Polaski* factors. For these reasons, substantial evidence supports the ALJ's credibility analysis.

B. <u>RFC Determination</u>

Plaintiff's argues that the ALJ's RFC determination is contrary to the medical evidence. *See* Pl.'s Br. 10-13. At the fourth step of the evaluation, a disability claimant has the burden of establishing her RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). A claimant's RFC is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704

(8th Cir. 2001). Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

Plaintiff argues that the ALJ erred by rejecting her treating physician's opinion in favor of the opinions of the consultative examiner and agency consultant. *See* Pl.'s Br. 11-12. A treating physician's opinion is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in a clamant's record. *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009); 20 C.F.R. § 404.1527(d)(2). The record must be evaluated as a whole to determine whether the treating physician's opinion should be controlling. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005). A treating physician's evaluation may be disregarded where other medical assessments "are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id.* at 920-21 (quoting *Prosch*, 201 F.3d at 1013). In any case, an ALJ must always "give good reasons" for the weight afforded to the treating physician's opinion. 20 C.F.R. § 404.1527(d)(2).

On October 4, 2010, Plaintiff's treating physician, George H. Tompkins, D.O., completed an RFC assessment. Tr. 351-354. He determined Plaintiff could sit for about four to five hours in an eight-hour workday, stand for about one hour during an eight-hour workday, walk for about forty to forty-five minutes during an eight-hour workday, occasionally lift less than five pounds with her left upper extremity, occasionally crouch and climb stairs and ramps, rarely bend, stoop, and balance, and never squat, crawl, kneel, twist, or climb ladders or scaffolds. Tr. 352. Dr. Tompkins found that Plaintiff could occasionally grasp and finger with her upper extremities, but could never push/pull,

work in extended position, work above shoulder level, or work overhead with her right upper extremity. Tr. 352. He also assessed environmental limitations regarding hazardous conditions and exposure to respiratory irritants, and noted that Plaintiff would require a sit/stand option. Tr. 353-354. Dr. Tompkins concluded that Plaintiff's pain was attributable to multi-joint degenerative disc disease and osteoarthritis compounded by widespread muscle weakness. Tr. 353. He also noted that Plaintiff suffered from unremitting fatigue suggestive of fibromyalgia, sacroiliitis in both legs, and hand pain. Dr. Tompkins opined that, in his opinion, Plaintiff was totally and permanently disabled. Tr. 354.

The ALJ considered Dr. Tompkins' medical records and RFC assessment. However, he determined that Dr. Tompkins' findings were not substantiated by the objective medical evidence, including his own treatment records. Notably, Dr. Tompkins completed his RFC assessment in October 2010, roughly two and a half years after he last treated Plaintiff in June 2008. Tr. 21. Moreover, medical opinions that a claimant is disabled are not the type of "medical opinions" entitled to controlling weight. *See Vandenboom v. Barnhart,* 421 F.3d 745, 750 (8th Cir. 2005).

Additionally, the ALJ noted that Dr. Tompkins' opinion conflicted with other medical evidence of record. Plaintiff's neurosurgeon, Dr. Johnson, released Plaintiff to work with no restrictions on August 9, 2005. Tr. 283-284. Michael R. Westbrook, M.D., performed a consultative physical examination on December 29, 2009, which revealed slightly limited rotation of the cervical spine, normal range of motion of the shoulders, wrists, elbows, hands, hips, knees, and ankles, 100% grip strength in both upper extremities, negative straight-leg raising, and no muscle weakness or atrophy. Tr. 249-253. Plaintiff was able to hold a pen and write, touch her fingertips to her palm, oppose her thumb to her fingers, pick up a coin, stand/walk without assistive devices, walk on her

heels and toes, and squat/arise from a squatting position. Tr. 252. X-ray imaging of Plaintiff's cervical spine revealed a healed fracture of C2. Tr. 253. Lumbar spine x-ray imaging revealed mild sclerosis of the lower level facet joints, but was otherwise unremarkable. Tr. 253. Dr. Westbrook diagnosed Plaintiff with degenerative joint disease and status post C2 fracture. Tr. 253.

Alice R. Davidson, M.D., a non-examining agency consultant, reviewed Plaintiff's medical records and concluded she was capable of performing light work with occasional stooping and crouching and frequent climbing (ramps/stairs, ladders/ropes/scaffolds), balancing, kneeling, and crawling. Tr. 256-263. Dr. Davidson further limited Plaintiff to only occasional overhead work. Tr. 259.

The ALJ ultimately determined that the opinions of Dr. Johnson, Dr. Westbrook, and the state agency consultants were more consistent with the evidence of record. *Estes v. Barnhart,* 275 F.3d 722, 725 (8th Cir. 2002) ("It is the ALJ's function to resolve conflicts among the various treating and examining physicians.") (internal quotations omitted). Contrary to Plaintiff's contentions, the absence of an RFC assessment from Dr. Westbrook does not invalidate or diminish his objective findings. Although adjudicators are "generally required" to request that acceptable medical sources provide medical source statements with their medical reports, the absence of such a report does not render a medical source evaluation incomplete. *See* Social Security Ruling 96-5p; 20 C.F.R. § 404.1519n(c)(6). Additionally, the ALJ was not required to recontact Dr. Tompkins, as there were no crucial undeveloped issues in this case. *See Goff v. Barnhart,* 421 F.3d 785, 791 (8th Cir. 2005). After considering the evidence of record, the undersigned concludes that substantial evidence supports the ALJ's RFC findings in their entirety.

C. <u>Grids</u>

Finally, Plaintiff argues that the ALJ erroneously relied upon the Medical-Vocational Guidelines ("Grids") to find that she could perform jobs existing in significant numbers in the national economy. *See* Pl.'s Br. 13-14. Specifically, Plaintiff argues that her manipulative limitations and pain are nonexertional in nature, thus making reliance on the Grids improper.

The Grids "are a set of charts listing certain vocational profiles that warrant a finding of disability or non-disability." *McCoy v. Astrue,* 648 F.3d 605, 613 (8th Cir. 2011) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2). The Grids take into account only exertional limitations and certain demographic features; they do not account for nonexertional limitations. *McCoy,* 648 F.3d at 613 (citing *Reynolds v. Chater,* 82 F.3d 254, 258-59 (8th Cir. 1996)). Therefore, if a claimant suffers from nonexertional impairments, an ALJ may not rely exclusively on the Grids, but must obtain vocational expert testimony. *See Ellis v. Barnhart,* 392 F.3d 988, 996 (8th Cir. 2005). However, an ALJ may apply the Grids despite the existence of a nonexertional impairment if he or she finds that the nonexertional impairment does not "diminish or significantly limit" the claimant's RFC to perform the full range of Guideline-listed activities. *Shannon v. Chater,* 54 F.3d 484, 488 (8th Cir. 1995).

The ALJ found that based on Plaintiff's age, education, and RFC, Grid Rule 201.27 directed a finding of "not disabled." Tr. 22. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.27. Substantial evidence supports the ALJ's reliance on the Grids. Notably, the ALJ did not find that Plaintiff suffered from any manipulative limitations. Dr. Tompkins was the only physician to assess manipulative limitations, and, as previously discussed, the ALJ properly discredited his medical opinion. Moreover, the ALJ discredited Plaintiff's subjective complaints of pain and concluded that

her pain did not diminish or significantly limit her ability to perform the full range of sedentary work. *See Reynolds,* 82 F.3d at 258 (where an ALJ properly discredits a claimant's complaint of a nonexertional impairment, the ALJ is not required to consult a vocational expert and may properly rely on the Grids at step five). As such, the undersigned finds that substantial evidence supports the ALJ's step five determination.

### V.     Conclusion

Having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's decision and recommends that the decision be affirmed and Plaintiff's case be dismissed with prejudice. **The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

ENTERED this 8th day of October 2013.

/s/ *J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE